ACCEPTED
15-24-00036-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/10/2025 4:11 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-24-00036-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/10/2025 4:11:58 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE FIFTEENTH COURT OF APPEALS
# AUSTIN, TEXAS

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY and MAX MIDSTREAM, LLC,** *Appellants*

**v.**

**SAN ANTONIO BAY ESTUARINE WATERKEEPER, TEXAS CAMPAIGN FOR THE ENVIRONMENT, and S. DIANE WILSON,** *Appellees*

On Appeal from the 201st Judicial District Court,
Travis County, Texas, Cause No. D-1-GN-22-002153

**APPELLANTS' EXHIBITS FOR ORAL ARGUMENT**

DEREK SEAL
State Bar No. 00797404
*dseal@mcginnislaw.com*
APRIL LUCAS
State Bar No. 24046323
JORDAN MULLINS
State Bar No. 24070308
*jmullins@mcginnislaw.com*
MCGINNIS LOCHRIDGE LLP
1111 W. Sixth St., Bldg. B, Ste. 400
Austin, Texas 78703
512.495.6000 (telephone)
512.505.6364 (telecopier)

*Attorneys for Intervenor-Defendant*
*Max Midstream, LLC*

SARA J. FERRIS
ASSISTANT ATTORNEY GENERAL
State Bar No. 50511915
Sara.Ferris@oag.texas.gov
Office of the Attorney General
Environmental Protection Division
P. O. Box 12548, MC 066
Austin, Texas 78711-2548
512.463.2012 (telephone)
512.320-0911 (telecopier)

*Counsel for Texas Commission*
*on Environmental Quality*

**INDEX OF APPELLANTS' EXHIBITS FOR ORAL ARGUMENT**

1.  Tex. Water Code §5.115(a) and (a-1) – Affected Person Standards

2.  Select TCEQ Rules from 30 Tex. Admin. Code, Chapter 55, Subchapter F, Governing Contested Case Hearing Requests

3.  Appellees' Claimed Personal Justiciable Interests (Plaintiffs' Presentation to District Court, November 8, 2023)

4.  Substantial Evidence Affidavit Presented to TCEQ by Max Midstream (A.R. 55 at 59-66)

5.  Texas Register Excerpts Regarding Exhaustion of Administrative Remedies (Appellant TCEQ Reply Brief, Appendix R-1: 40 *Tex. Reg.* 9651, 9654-55 (Dec. 25, 2015), and R-2: 40 *Tex. Reg.* 9660, 9670 (Dec. 25, 2015))

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of this, Appellants' Exhibits for Oral Argument, including all attachments, was served on counsel of record through the Court's electronic filing system on this the 10th day of January, 2025, as set forth below:

Erin Gaines
Earthjustice
10900 Research Blvd, Ste. 160C PMB 3021
Austin, Texas 78759
Phone:  (512) 720-5354
egaines@earthjustice.org

Ilan Levin
Environmental Integrity Project
1206 San Antonio Street
Austin, Texas 78701
Phone: (512) 619-7287
ilevin@environmentalintegrity.org
**Attorneys for Appellees**
**San Antonio Bay Estuarine**
**Waterkeeper and Texas Campaign**
**for the Environment**

Karis Adams
Texas RioGrande Legal Aid
3825 Agnes St.
Corpus Christi, Texas 78405
Phone:  (361) 880-5430
Fax:  (956) 591-8752
karisadams@trla.org

Mr. Ethan Siegel
Texas RioGrande Legal Aid
4920 N Interstate 35, Suite 100
Austin, TX 78751-2717
esiegel@trla.org
**Attorneys for Appellee**
**S. Diane Wilson**

Sara J. Ferris
Assistant Attorney General
Erin Snody
Assistant Attorney General
Office of the Attorney General
Environmental Protection
Division
P.O. Box 12548, MC-066
Austin, Texas 78711
(512) 463-2012
Fax: (512) 320-0911
Sara.Ferris@oag.texas.gov
Erin.snody@oag.texas.gov
**Attorneys for Defendant**
**TCEQ**


                           */s/Derek Seal*
                           Derek Seal

# TAB 1

Texas Water Code §5.115(a) and a-1) – Affected
Person Standards

Tex. Water Code, Sec. 5.115. PERSONS AFFECTED IN COMMISSION HEARINGS; NOTICE OF APPLICATION. (a) For the purpose of an administrative hearing held by or for the commission involving a contested case, "affected person," or "person affected," or "person who may be affected" means a person who has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the administrative hearing. An interest common to members of the general public does not qualify as a personal justiciable interest.

(a-1) The commission shall adopt rules specifying factors which must be considered in determining whether a person is an affected person in any contested case arising under the air, waste, or water programs within the commission's jurisdiction and whether an affected association is entitled to standing in contested case hearings. For a matter referred under Section 5.556, the commission:

(1) may consider:

(A) the merits of the underlying application, including whether the application meets the requirements for permit issuance;

(B) the likely impact of regulated activity on the health, safety, and use of the property of the hearing requestor;

(C) the administrative record, including the permit application and any supporting documentation;

(D) the analysis and opinions of the executive director; and

(E) any other expert reports, affidavits, opinions, or data submitted on or before any applicable deadline to the commission by the executive director, the applicant, or a hearing requestor; and

(2) may not find that:

(A) a group or association is an affected person unless the group or association identifies, by name and physical address in a timely request for a contested case hearing, a member of the group or association who would be an affected person in the person's own right; or

(B) a hearing requestor is an affected person unless the hearing requestor timely submitted comments on the permit application.

# TAB 2

Select TCEQ Rules from 30 Tex. Admin. Code, Chapter 55, Subchapter F, Governing Contested Case Hearing Requests

Texas Administrative Code
Title 30. Environmental Quality
Part 1. Texas Commission on Environmental Quality
Chapter 55. Requests for Reconsideration and Contested Case Hearings; Public Comment
Subchapter F. Requests for Reconsideration or Contested Case Hearing

30 TAC § 55.201

§ 55.201. Requests for Reconsideration or Contested Case Hearing

Effective: January 7, 2021
Currentness

(a) A request for reconsideration or contested case hearing must be filed no later than 30 days after the chief clerk mails (or otherwise transmits) the executive director's decision and response to comments and provides instructions for requesting that the commission reconsider the executive director's decision or hold a contested case hearing.

(b) The following may request a contested case hearing under this chapter:

(1) the commission;

(2) the executive director;

(3) the applicant; and

(4) affected persons, when authorized by law.

(c) A request for a contested case hearing by an affected person must be in writing, must be filed with the chief clerk within the time provided by subsection (a) of this section, may not be based on an issue that was raised solely in a public comment withdrawn by the commenter in writing by filing a withdrawal letter with the chief clerk prior to the filing of the Executive Director's Response to Comment, and, for applications filed on or after September 1, 2015, must be based only on the requestor's timely comments.

(d) A hearing request must substantially comply with the following:

(1) give the name, address, daytime telephone number, and, where possible, fax number of the person who files the request. If the request is made by a group or association, the request must identify one person by name, address, daytime telephone number, and, where possible, fax number, who shall be responsible for receiving all official communications and documents for the group;

(2) identify the person's personal justiciable interest affected by the application, including a brief, but specific, written statement explaining in plain language the requestor's location and distance relative to the proposed facility or activity that is the subject of the application and how and why the requestor believes he or she will be adversely affected by the proposed facility or activity in a manner not common to members of the general public;

(3) request a contested case hearing;

(4) for applications filed:

(A) before September 1, 2015, list all relevant and material disputed issues of fact that were raised during the public comment period and that are the basis of the hearing request. To facilitate the commission's determination of the number and scope of issues to be referred to hearing, the requestor should, to the extent possible, specify any of the executive director's responses to comments that the requestor disputes and the factual basis of the dispute and list any disputed issues of law or policy; or

(B) on or after September 1, 2015, list all relevant and material disputed issues of fact that were raised by the requestor during the public comment period and that are the basis of the hearing request. To facilitate the commission's determination of the number and scope of issues to be referred to hearing, the requestor should, to the extent possible, specify any of the executive director's responses to the requestor's comments that the requestor disputes, the factual basis of the dispute, and list any disputed issues of law; and

(5) provide any other information specified in the public notice of application.

(e) Any person, other than a state agency that is prohibited by law from contesting the issuance of a permit or license as set forth in §55.103 of this title (relating to Definitions), may file a request for reconsideration of the executive director's decision. The request must be in writing and be filed by United States mail, facsimile, or hand delivery with the chief clerk within the time provided by subsection (a) of this section. The request should also contain the name, address, daytime telephone number, and, where possible, fax number of the person who files the request. The request for reconsideration must expressly state that the person is requesting reconsideration of the executive director's decision, and give reasons why the decision should be reconsidered.

(f) Documents that are filed with the chief clerk before the public comment deadline that comment on an application but do not request reconsideration or a contested case hearing shall be treated as public comment.

(g) Procedures for late filed public comments, requests for reconsideration, or contested case hearing are as follows.

(1) A request for reconsideration or contested case hearing, or public comment shall be processed under §55.209 of this title (relating to Processing Requests for Reconsideration and Contested Case Hearing) or under §55.156 of this title (relating to Public Comment Processing), respectively, if it is filed by the deadline. The chief clerk shall accept a request for reconsideration or contested case hearing, or public comment that is filed after the deadline but the chief clerk shall not process it. The chief clerk shall place the late documents in the application file.

(2) The commission may extend the time allowed to file a request for reconsideration, or a request for a contested case hearing.

(h) Any person, except the applicant, the executive director, the public interest counsel, and a state agency that is prohibited by law from contesting the issuance of a permit or license as set forth in §55.103 of this title, who was provided notice as required under Chapter 39 of this title (relating to Public Notice) but who failed to file timely public comment, failed to file a timely hearing request, failed to participate in the public meeting held under §55.154 of this title (relating to Public Meetings), and failed to participate in the contested case hearing under Chapter 80 of this title (relating to Contested Case Hearings) may file a motion for rehearing under §50.119 of this title (relating to Notice of Commission Action, Motion for Rehearing), or §80.272 of this title (relating to Motion for Rehearing) or may file a motion to overturn the executive director's decision under §50.139 of this title (relating to Motion to Overturn Executive Director's Decision) only to the extent of the changes from the draft permit to the final permit decision.

(i) Applications for which there is no right to a contested case hearing include:

(1) a minor amendment or minor modification of a permit under Chapter 305, Subchapter D of this title (relating to Amendments, Renewals, Transfers, Corrections, Revocation, and Suspension of Permits);

(2) a Class 1 or Class 2 modification of a permit under Chapter 305, Subchapter D of this title;

(3) any air permit application for the following:

(A) initial issuance of an electric generating facility permit;

(B) permits issued under Chapter 122 of this title (relating to Federal Operating Permits Program);

(C) a permit issued under Chapter 116, Subchapter B, Division 6 of this title (relating to Prevention of Significant Deterioration Review) that would authorize only emissions of greenhouse gases as defined in §101.1 of this title (relating to Definitions); or

(D) amendment, modification, or renewal of an air application that would not result in an increase in allowable emissions and would not result in the emission of an air contaminant not previously emitted. The commission may hold a contested case hearing if the application involves a facility for which the applicant's compliance history contains violations that are unresolved and that constitute a recurring pattern of egregious conduct that demonstrates a consistent disregard for the regulatory process, including the failure to make a timely and substantial attempt to correct the violations;

(4) hazardous waste permit renewals under §305.65(8) of this title (relating to Renewal);

(5) an application, under Texas Water Code, Chapter 26, to renew or amend a permit if:

(A) the applicant is not applying to:

(i) increase significantly the quantity of waste authorized to be discharged; or

(ii) change materially the pattern or place of discharge;

(B) the activity to be authorized by the renewal or amended permit will maintain or improve the quality of waste authorized to be discharged;

(C) any required opportunity for public meeting has been given;

(D) consultation and response to all timely received and significant public comment has been given; and

(E) the applicant's compliance history for the previous five years raises no issues regarding the applicant's ability to comply with a material term of the permit;

(6) an application for a Class I injection well permit used only for the disposal of nonhazardous brine produced by a desalination operation or nonhazardous drinking water treatment residuals under Texas Water Code, §27.021, concerning Permit for Disposal of Brine from Desalination Operations or of Drinking Water Treatment Residuals in Class I Injection Wells;

(7) the issuance, amendment, renewal, suspension, revocation, or cancellation of a general permit, or the authorization for the use of an injection well under a general permit under Texas Water Code, §27.025, concerning General Permit Authorizing Use of Class I Injection Well to Inject Nonhazardous Brine from Desalination Operations or Nonhazardous Drinking Water Treatment Residuals;

(8) an application for a permit, registration, license, or other type of authorization required to construct, operate, or authorize a component of the FutureGen project as defined in §91.30 of this title (relating to Definitions), if the application was submitted on or before January 1, 2018;

(9) other types of applications where a contested case hearing request has been filed, but no opportunity for hearing is provided by law; and

(10) an application for a production area authorization, except as provided in accordance with §331.108 of this title (relating to Opportunity for a Contested Case Hearing on a Production Area Authorization Application).

**Credits**

**Source:** The provisions of this §55.201 adopted to be effective October 20, 1999, 24 TexReg 9015; amended to be effective September 16, 2004, 29 TexReg 8817; amended to be effective March 29, 2006, 31 TexReg 2482; amended to be effective July 10, 2008, 33 TexReg 5325; amended to be effective March 12, 2009, 34 TexReg 1624; amended to be effective May 3, 2012,

37 TexReg 3133; amended to be effective April 17, 2014, 39 TexReg 2869; amended to be effective December 11, 2014, 39 TexReg 9578; amended to be effective December 31, 2015, 40 TexReg 9660; amended to be effective May 14, 2020, 45 TexReg 3079; amended to be effective January 7, 2021, 46 TexReg 189.

Current through 49 Tex.Reg. No. 9842, dated November 30, 2024, as effective on or before December 6, 2024. Some sections may be more current. See credits for details.

30 TAC § 55.201, 30 TX ADC § 55.201

---

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Texas Administrative Code
   Title 30. Environmental Quality
      Part 1. Texas Commission on Environmental Quality
         Chapter 55. Requests for Reconsideration and Contested Case Hearings; Public Comment
            Subchapter F. Requests for Reconsideration or Contested Case Hearing

30 TAC § 55.203

§ 55.203. Determination of Affected Person

Effective: December 31, 2015

Currentness

(a) For any application, an affected person is one who has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the application. An interest common to members of the general public does not qualify as a personal justiciable interest.

(b) Except as provided by §55.103 of this title (relating to Definitions), governmental entities, including local governments and public agencies, with authority under state law over issues raised by the application may be considered affected persons.

(c) In determining whether a person is an affected person, all factors shall be considered, including, but not limited to, the following:

(1) whether the interest claimed is one protected by the law under which the application will be considered;

(2) distance restrictions or other limitations imposed by law on the affected interest;

(3) whether a reasonable relationship exists between the interest claimed and the activity regulated;

(4) likely impact of the regulated activity on the health and safety of the person, and on the use of property of the person;

(5) likely impact of the regulated activity on use of the impacted natural resource by the person;

(6) for a hearing request on an application filed on or after September 1, 2015, whether the requestor timely submitted comments on the application that were not withdrawn; and

(7) for governmental entities, their statutory authority over or interest in the issues relevant to the application.

(d) In determining whether a person is an affected person for the purpose of granting a hearing request for an application filed on or after September 1, 2015, the commission may also consider the following:

(1) the merits of the underlying application and supporting documentation in the commission's administrative record, including whether the application meets the requirements for permit issuance;

(2) the analysis and opinions of the executive director; and

(3) any other expert reports, affidavits, opinions, or data submitted by the executive director, the applicant, or hearing requestor.

(e) In determining whether a person is an affected person for the purpose of granting a hearing request for an application filed before September 1, 2015, the commission may also consider the factors in subsection (d) of this section to the extent consistent with case law.

**Credits**
**Source:** The provisions of this §55.203 adopted to be effective October 20, 1999, 24 TexReg 9015; amended to be effective May 3, 2012, 37 TexReg 3133; amended to be effective December 31, 2015, 40 TexReg 9660.

Current through 49 Tex.Reg. No. 9842, dated November 30, 2024, as effective on or before December 6, 2024. Some sections may be more current. See credits for details.

30 TAC § 55.203, 30 TX ADC § 55.203

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Texas Administrative Code
  Title 30. Environmental Quality
    Part 1. Texas Commission on Environmental Quality
      Chapter 55. Requests for Reconsideration and Contested Case Hearings; Public Comment
        Subchapter F. Requests for Reconsideration or Contested Case Hearing

30 TAC § 55.205

§ 55.205. Request by Group or Association

Effective: December 31, 2015
Currentness

(a) A group or association may request a contested case hearing only if the group or association meets all of the following requirements:

(1) one or more members of the group or association would otherwise have standing to request a hearing in their own right;

(2) the interests the group or association seeks to protect are germane to the organization's purpose; and

(3) neither the claim asserted nor the relief requested requires the participation of the individual members in the case.

(b) For applications filed on or after September 1, 2015, a request by a group or association for a contested case may not be granted unless all of the following requirements are met:

(1) comments on the application are timely submitted by the group or association;

(2) the request identifies, by name and physical address, one or more members of the group or association that would otherwise have standing to request a hearing in their own right;

(3) the interests the group or association seeks to protect are germane to the organization's purpose; and

(4) neither the claim asserted nor the relief requested requires the participation of the individual members in the case.

(c) The executive director, the public interest counsel, or the applicant may request that a group or association provide an explanation of how the group or association meets the requirements of subsection (a) or (b) of this section. The request and reply shall be filed according to the procedure in §55.209 of this title (relating to Processing Requests for Reconsideration and Contested Case Hearing).

**Credits**

**Source:** The provisions of this §55.205 adopted to be effective October 20, 1999, 24 TexReg 9015; amended to be effective December 31, 2015, 40 TexReg 9660.

Current through 49 Tex.Reg. No. 9842, dated November 30, 2024, as effective on or before December 6, 2024. Some sections may be more current. See credits for details.

30 TAC § 55.205, 30 TX ADC § 55.205

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Texas Administrative Code
  Title 30. Environmental Quality
    Part 1. Texas Commission on Environmental Quality
      Chapter 55. Requests for Reconsideration and Contested Case Hearings; Public Comment
        Subchapter F. Requests for Reconsideration or Contested Case Hearing

30 TAC § 55.211

§ 55.211. Commission Action on Requests for Reconsideration and Contested Case Hearing

Effective: December 31, 2015
Currentness

(a) Commission consideration of the following items is not itself a contested case subject to the Texas Administrative Procedure Act (APA):

(1) public comment;

(2) executive director's response to comment;

(3) request for reconsideration; or

(4) request for contested case hearing.

(b) The commission will evaluate public comment, executive director's response to comment, requests for reconsideration, and requests for contested case hearing and may:

(1) grant or deny the request for reconsideration;

(2) determine that a hearing request does not meet the requirements of this subchapter, and act on the application; or

(3) determine that a hearing request meets the requirements of this subchapter and:

(A) if the request raises disputed issues of fact that were raised during the comment period, that were not withdrawn by the commenter in writing by filing a withdrawal letter with the chief clerk prior to the filing of the Executive Director's Response to Comment, and that are relevant and material to the commission's decision on the application:

(i) specify the number and scope of the specific factual issues to be referred to the State Office of Administrative Hearings (SOAH);

(ii) specify the maximum expected duration of the hearing; and

(iii) direct the chief clerk to refer the issues to SOAH for a hearing; or

(B) if the request raises only disputed issues of law or policy, make a decision on the issues and act on the application; or

(4) direct the chief clerk to refer the hearing request to SOAH. The referral may specify that SOAH should prepare a recommendation on the sole question of whether the requestor is an affected person. If the commission refers the hearing request to SOAH it shall be processed as a contested case under the APA. If the commission determines that a requestor is an affected person, SOAH may proceed with a contested case hearing on the application if either the commission has specified, or the parties have agreed to, the number and scope of the issues and maximum expected duration of the hearing.

(c) A request for a contested case hearing shall be granted if the request is:

(1) made by the applicant or the executive director;

(2) made by an affected person if the request:

(A) is on an application filed:

(i) before September 1, 2015, and raises disputed issues of fact that:

(I) were raised during the comment period;

(II) were not withdrawn by the commenter by filing a withdrawal letter with the chief clerk prior to the filing of the executive director's response to comment; and

(III) are relevant and material to the commission's decision on the application; or

(ii) on or after September 1, 2015, and raises disputed issues of fact or mixed questions of fact or law that:

(I) were raised during the comment period by the affected person whose request is granted;

(II) were not withdrawn by filing a withdrawal letter with the chief clerk prior to the filing of the executive director's response to comment;, and

(III) are relevant and material to the commission's decision on the application;

(B) is timely filed with the chief clerk;

(C) is pursuant to a right to hearing authorized by law; and

(D) complies with the requirements of §55.201 of this title (relating to Requests for Reconsideration or Contested Case Hearing).

(d) Notwithstanding any other commission rules, the commission may refer an application to SOAH if the commission determines that:

(1) a hearing would be in the public interest; or

(2) the application is for an amendment, modification, or renewal of an air permit under Texas Health and Safety Code, §382.0518 or §382.055 that involves a facility for which the applicant's compliance history contains violations which are unresolved and which constitute a recurring pattern of egregious conduct which demonstrates a consistent disregard for the regulatory process, including the failure to make a timely and substantial attempt to correct the violations.

(3) the application is for renewal of a hazardous waste permit, subject to §305.65(8) of this title (relating to Renewal) and the applicant's compliance history as determined under Chapter 60 of this title (relating to Compliance History) raises an issue regarding the applicant's ability to comply with a material term of its permit.

(4) the application is for renewal or amendment of a wastewater discharge permit and the applicant's compliance history as determined under Chapter 60 of this title raises an issue regarding the applicant's ability to comply with a material term of its permit.

(e) If a request for a contested case hearing is granted, a decision on a request for reconsideration or contested case hearing is an interlocutory decision on the validity of the request or issue and is not binding on the issue of designation of parties under §80.109 of this title (relating to Designation of Parties) or the issues referred to SOAH under this section. A judge may consider additional issues beyond the list referred by the commission as provided by §80.4(c)(16) of this title (relating to Judges). A person whose request for reconsideration or contested case hearing is denied may still seek to be admitted as a party under §80.109 of this title if any hearing request is granted on an application. Failure to seek party status shall be deemed a withdrawal of a person's request for reconsideration or hearing request.

(f) If all requests for reconsideration or contested case hearing are denied, §80.272 of this title (relating to Motion for Rehearing) applies. A motion for rehearing in such a case must be filed not later than 25 days after the date that the commission's final decision or order is signed, unless the time for filing the motion for rehearing has been extended under Texas Government Code, §2001.142 and §80.276 of this title (relating to Request for Extension to File Motion for Rehearing), by agreement under Texas Government Code, §2001.147, or by the commission's written order issued pursuant to Texas Government Code, §2001.146(e). If the motion is denied under §80.272 and §80.273 of this title (relating to Motion for Rehearing and Decision Final and Appealable) the commission's decision is final and appealable under Texas Water Code, §5.351 or Texas Health and Safety Code, §361.321 or §382.032, or under the APA.

(g) If all hearing requestors whose requests for a contested case hearing were granted with regard to an issue, withdraw in writing their hearing requests with regard to the issue before issuance of the notice of the contested case hearing, the scope of the hearing no longer includes that issue except as authorized under §80.4(c)(16) of this title.

**Credits**

**Source:** The provisions of this §55.211 adopted to be effective October 20, 1999, 24 TexReg 9015; amended to be effective August 29, 2002, 27 TexReg 7822; amended to be effective December 31, 2015, 40 TexReg 9660.

Current through 49 Tex.Reg. No. 9842, dated November 30, 2024, as effective on or before December 6, 2024. Some sections may be more current. See credits for details.

30 TAC § 55.211, 30 TX ADC § 55.211

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 3

Appellees' Claimed Personal Justiciable Interests
(Plaintiffs' Presentation to District Court, November 8, 2023)

Plaintiffs work, recreate, or live within 2 to 5 miles:

- Mr. and Ms. Maresh live **1.79 miles** from the Terminal. AR70 at 408 (Tab 16, 400).
- Ms. Wilson visits 1-3 times/week water monitoring sites **less than 1 mile** and **up to 3 miles** from the Terminal to enforce consent decree, and she swims, kayaks and boats in nearby Bays. AR70 at 408-09, 425-33, 440-41 (Tab 16, 400-01, 417-425; Tab 17, 433-34)
- Mr. Blanco spends up to 4.5 months/year shrimping and oystering between **1.38 and 2.32 miles** from the Terminal. AR70 at 364 (Tab 14, 358); AR61 at 89-93 (Tab 12, 344-48).
- Mr. Miller works 50-60 hours/week at his seafood business **within 5 miles** and recreationally fishes monthly **about 2 miles** from the Terminal. AR70 at 362-63 (Tab 14, 356-57)

## Plaintiffs' Particularized Recreational & Aesthetic Interests

- **John and Janet Maresh** – concerned about worsening "thick acrid smog" and cumulative air pollution impacts that will push the area into non-attainment for federal air quality standards, which will diminish their use and enjoyment of their property. AR70 at 408 (Tab 16, 400); Pl. Br. 35-37.

- **Curtis Miller** – fishes recreationally at reefs just over 2 miles from Terminal monthly, air pollution will interfere with his work and recreational activities due to his asthma.  AR70 at 363 (Tab 14, 357); Pl. Br. 38-39.

- **Diane Wilson** – regularly swims, kayaks, fishes, and boats in Lavaca and Matagorda Bays, her deep connection to and enjoyment of the Bays diminished by industrial facilities.  AR70 at 440–41 (Tab 17, 433-34); Pl. Br. 31-32.

# TAB 4

Substantial Evidence Affidavit Presented to TCEQ by Max
Midstream (A.R. 55 at 59-66)

STATE OF ARKANSAS           §

COUNTY OF WASHINGTON      §


BEFORE ME, the undersigned authority, on this day personally appeared Lucy Fraiser, who after being duly sworn upon her oath stated as follows:

1.      My name is Lucy Fraiser. I am over 21 years of age, am of sound mind, and am fully competent to make this affidavit. Each and every statement contained in this affidavit is based upon my personal knowledge, and each and every statement is true and correct.

2.      I am a toxicologist. I perform air quality health and welfare evaluations, provide litigation and regulatory support and prepare soil/water human health and ecological risk assessments. I formed Lucy Fraiser Toxicology Consulting LLC in July 2017, which is a toxicology consulting firm.


I have been retained on behalf of Max Midstream, LLC (*"Max Midstream"*) to conduct a public health and welfare effects evaluation related to the potential for health and/or welfare effects from maximum allowable emissions from the expansion of the Seahawk Terminal (*"Seahawk Terminal"*) proposed by Max Midstream's application for Texas Commission on Environmental Quality (*"TCEQ"*) Permit Application No. 162941 (*"Application"*). I have reviewed the following documents, as well as data regarding the Application provided to me by Trinity Consultants, which prepared the air dispersion modeling for the Application:

TCEQ's Air Quality Analysis Audit dated January 26, 2021 (*"Modeling Audit"*);

TCEQ Modeling Audit dated March 4, 2021 (*"Supplemental Modeling Audit"*);

Affidavit of Joe Kupper, Manager of the Austin Office for Trinity Consultants, in the same TCEQ Docket Number listed above for the Application (*"Kupper Affidavit"*);

Affidavit of Tony Nguyen, Senior Vice-President for Global Innovation and Technical Services for Max Midstream, in the same TCEQ Docket Number listed above for the Application (*"Nguyen Affidavit"*);

Comments and Hearing Requests on the Application submitted on November 12, 2020, June 4, 2021, August 17, 2021, and January 10, 2022 by Diane Wilson, San Antonio Bay Estuarine Waterkeeper, Texas Rio Grande Legal Aid, and Environmental Integrity Project (*"Group Hearing Requests"*);

TCEQ's *Modeling and Effects Applicability Review: How to Determine the Scope of Modeling and Effects Review for Air Permits* (APDG 5874) (2018) (*"MERA"*);

2474029.v1

TCEQ's *Guidelines to Develop Toxicity Factors* (RG-442) (September 2015);

TCEQ's ESLs for crude oil, < 1% benzene, and fuel oil no. 2, available in the TCEQ Texas Air Monitoring Information System Toxicity Factor Database at https://www17.tceq.texas.gov/tamis/index.cfm;

TCEQ's Effects Evaluation Procedure: Marine Vessels dated (August, 2001) (*"Extended Tier II Guidance for Marine Terminals"* at https://www.tceq.texas.gov/searchpage?q=TCEQ%E2%80%99s+Effects+Evaluation+Pro cedure%3A+Marine+Vessels+dated+August%2C+2001&btnG=TCEQ+Search.

These are the same type of documents that I have reviewed, or any toxicologist would be expected to review, and rely upon in conducting a public health and welfare effects evaluation.

4. I received a Ph.D. in Toxicology in 1992 from the University of Texas at Austin and a B.A. Degree in Psychology from the University of Texas at Austin in 1984. I am a Diplomate of the American Board of Toxicology (*"DABT"*). The DABT certification is a globally-recognized credential in toxicology. The DABT certification is a certification by the American Board of Toxicology (*"ABT"*), which is the largest professional toxicology credentialing organization in the world. The DABT certification represents competency and commitment to human health and environmental sciences. Becoming certified by the ABT requires a combination of higher education and experience, with rigorous certification (testing) and recertification processes. I am also a member of the American College of Toxicology. I have conducted and managed hundreds of multi-pathway exposure and human health risk assessments and risk-based corrective action evaluations over my 32-year career. Early in my career, I worked in the Toxicology Division of the Texas Natural Resource Conservation Commission (*"TNRCC"*), the predecessor agency to the TCEQ. After leaving the TNRCC in 1998, I worked for a number of different consulting firms as a toxicologist. I started Lucy Fraiser Toxicology Consulting LLC in July 2017. While I work with all environmental media, I specialize in air quality public health and welfare effects evaluations. I have performed these evaluations for many industrial source types and types of pollutants. I have extensive experience performing public health and welfare effects evaluations related to air quality permit applications submitted to the TCEQ and its predecessor agency, the TNRCC. I have conducted health and welfare evaluations for proposed and/or existing emissions from dozens of industrial facilities, including hazardous waste combustion facilities, refineries, electricity generating units, chemical plants, concrete batch plants, rock crushers, cement kilns, and smelters (copper and lead). I have also performed numerous other air quality evaluations in other states not directly related to the air permitting process. I have been qualified as an expert, been deposed, and have provided expert testimony in contested case hearings, federal civil suits, and state toxic tort litigation involving potential effects of air emissions on public health and welfare on numerous occasions.

5. Applicants for TCEQ air permit applications use air dispersion modeling to predict concentrations of the pollutants from the proposed facilities at "receptors," which TCEQ modeling guidance defines as locations "where the public could be exposed to an air contaminant in the ambient air.". Air dispersion models predict movement of contaminants in the atmosphere and provide conservative estimates (i.e., overestimates) of air pollutant concentrations at different

2474029.v1

distances and directions from the emissions source. Exposure occurs when local populations come into contact with pollutants from an emissions release. Therefore, conservatively estimated air concentrations from air dispersion modeling are routinely used to evaluate potential exposures by providing conservatively estimated air concentrations (i.e., overestimated by comparison to actual expected exposure levels) at different locations. The concentration of a pollutant to which a member of the public is potentially exposed is critical to determining whether adverse health or welfare effects will occur. Toxicologists in TCEQ's Toxicology Division use the results from the air dispersion modeling in their toxicological evaluations of the effects of proposed emissions. The objectives of the analysis are to: 1) establish off-property ground-level concentrations ("*GLCs*") of contaminants resulting from proposed and/or existing emissions; and 2) evaluate these GLCs for their potential to cause adverse health or welfare effects. TCEQ's effects evaluation process, which relies on air dispersion modeling results, includes three areas of review.

6.      The first TCEQ effects evaluation looks at constituents for which the U.S. Environmental Protection Agency has established a National Ambient Air Quality Standard ("*NAAQS*"), also known as "criteria pollutants." In the State NAAQS Analysis, proposed emissions of criteria pollutants from the project are modeled to estimate maximum ground-level concentrations ("*GLC$_{max}$*"), with the objective of determining whether the project has the potential to cause or contribute to an exceedance of the NAAQS. EPA establishes each NAAQS at a level that is protective of public health and welfare with an adequate Margin of Safety ("*MOS*"). Employing conservative measures in deriving the NAAQS helps EPA to ensure that there is an adequate MOS between exposure concentrations associated with adverse health/welfare effects and the NAAQS. According to the TCEQ's review of the air dispersion modeling associated with the Application, which is included in the Modeling Audit:

   a.   As indicated in the table below, the GLC$_{max}$ for PM$_{10}$ (24-hr), PM$_{2.5}$ (Annual), NO$_2$ (Annual), CO (1-hr) and CO (8-hr) were all below the *de minimis* level, so no further evaluation was warranted.

| Pollutant | Averaging Time | GLCmax (µg/m³) | De Minimis (µg/m³) |
|---|---|---|---|
| PM$_{10}$ | 24-hr | 2 | 5 |
| PM$_{2.5}$ | Annual | 0.1 | 0.2 |
| NO$_2$ | Annual | 0.8 | 1 |
| CO | 1-hr | 89 | 2000 |
| CO | 8-hr | 43 | 500 |

   Thus, the highest modeled criteria pollutant concentrations from proposed Seahawk Terminal sources at or beyond the fence line were below the *de minimis* NAAQS, otherwise known as Significant Impact Levels ("*SILs*"), for PM$_{10}$ (24-hr), PM$_{2.5}$

2474029.v1

(Annual), NO₂ (Annual), CO (1-hr) and CO (8-hr). Since the SILs are set at a small fraction of the health and welfare-protective NAAQS, these criteria pollutants are not expected to pose a health or welfare threat.

b. For the NAAQS pollutants for which the GLC$_{max}$ was above the *de minimis* level, SO₂ (1-hr), SO₂ (3-hr), PM₂.₅ (24-hr), and NO₂ (1-hr), an additional evaluation was conducted. However, based on the additional evaluation summarized in the Modeling Audit, which is summarized in the table below, the GLC$_{max}$ plus estimated background levels for each of those NAAQS pollutants was only a fraction or a very small fraction of the NAAQS standard.

| Pollutant | Averaging Time | GLCmax ($\mu g/m^3$) | Background ($\mu g/m^3$) | Total Conc. = [Background + GLCmax] ($\mu g/m^3$) | Standard ($\mu g/m^3$) |
|---|---|---|---|---|---|
| SO₂ | 1-hr | 31 | 15 | 46 | 196 |
| SO₂ | 3-hr | 30 | 25 | 55 | 1300 |
| PM₂.₅ | 24-hr | 1 | 23 | 24 | 35 |
| NO₂ | 1-hr | 42 | 85 | 127 | 188 |

Thus, total concentrations of SO₂ (1-hr), SO₂ (3-hr), PM₂.₅ (24-hr), and NO₂ (1-hr), were each well below their corresponding primary and secondary NAAQS, which included modeled concentrations from the Seahawk Terminal and ambient monitored background concentrations within an extended area. Since the NAAQS are conservatively designed to protect public health and welfare and include a MOS (margin of safety), these criteria pollutants are also not be expected to pose a health or welfare threat.

7.     Next, the second TCEQ effects evaluation is a State Property Line Standard analysis completed for sulfur compounds in which measured or modeled GLC$_{max}$ are compared to TCEQ-derived State Property Line Standards in addition to the federal NAAQS. The Modeling Audit indicates that the GLC$_{max}$ for each sulfur compound included in the State Property Line Standards, which are included in the table below, are well below the State Property Line Standards.

2474029.v1

| Pollutant | Averaging Time | GLCmax ($\mu g/m^3$) | Standard ($\mu g/m^3$) |
|:---:|:---:|:---:|:---:|
| $SO_2$ | 1-hr | 140 | 1021 |
| $H_2S$ | 1-hr | 14 | 108 (If property is residential, recreational, business, or commercial) |
| $H_2S$ | 1-hr | 30 | 162 (If property is not residential, recreational, business, or commercial) |

Therefore, hourly GLCmax for $SO_2$ and $H_2S$ comply with the State Property Line Standards established by the TCEQ. It is my opinion that the hourly GLCmax for $SO_2$ and $H_2S$ do not pose a health or welfare threat.

8.      The third TCEQ effects evaluation involves a public health and welfare effects evaluation for constituents lacking a NAAQS or TCEQ State Property Line Standards, and for these constituents, an evaluation is conducted in accordance with appendix D of TCEQ's guidance entitled *Modeling and Effects Applicability Review: How to Determine the Scope of Modeling and Effects Review for Air Permits* (APDG 5874) (2018) ("*MERA*"). In the MERA evaluation, modeled GLCmax are compared to TCEQ-derived Effects Screening Levels ("*ESLs*"), which are health and/or welfare-based screening levels (not promulgated standards, such as the NAAQS and State Property Line Standards) used in the TCEQ permitting process. ESLs are only guidelines or screening levels that TCEQ sets at concentrations that correspond to a "no significant risk level." Therefore, if predicted airborne levels of a compound exceed the relevant ESL, adverse health or welfare effects would not necessarily be expected to occur, but a more in-depth review would be triggered. Because they are designed to be preventative in nature, ESLs are set at levels: 1) below the threshold for health effects; 2) corresponding to an insignificant risk; or 3) where odor nuisance or vegetative effects are unlikely. Setting ESLs at these conservative levels ensures that public health and welfare are protected by incorporating a MOS. TCEQ's MERA guidance establishes a process for determining the scope of air modeling and the extent of the health effects review necessary. Steps 1 through 7 of the MERA consist of conservative procedures used by air permitting engineers to evaluate the potential for health effects of air contaminants. The Toxicology Effects Evaluation Procedure located in Appendix D of the MERA is based on a three-tiered approach, with Tiers I, II, and III representing progressively more complex levels of review.

Tier I involves determining if the off-property GLCmax is below the ESL. If the GLCmax is below the ESL, adverse health/welfare effects are not expected. If the GLCmax is above the ESL, the analysis continues to the next tier. Tier II entails determining if the GLCmax occurs on industrial property. If the GLCmax occurs on industrial property and is less than or equal to two times the ESL, adverse health and welfare effects are not expected to occur. If the GLCmax occurs on non-industrial property ("*GLCni*") and the GLCni is less than the ESL, adverse health/welfare effects are not expected to occur. If either the GLCmax on industrial property is greater than two times the

AFFIDAVIT OF LUCY FRAISER
FRAISER TOXICOLOGY CONSULTANTS, LLC
TCEQ DOCKET NO. 2021-0157-AIR
PAGE 5

2474029.v1

ESL or the GLC$_{ni}$ is greater than the ESL, the analysis continues to the next tier. However, if the hourly GLC$_{max}$ exceeds two times the ESL for 24 hours or less, a Tier III evaluation need not be conducted according to TCEQ'S Extended Tier II Guidance for Marine Terminals provided in *"Effects Evaluation Procedure: Marine Vessels"*. Limiting the number of hours that an ESL can be exceeded by a particular magnitude reduces the likelihood of repeated exposure to concentrations above the ESL (which are set at levels that do not pose a significant risk) and further reduces the likelihood of health or welfare effects. Short-term ESLs are designed to be protective of more than a single 1-hour exposure and, therefore, as long as the frequency of those exceedances is limited, adverse health and welfare effects are not expected. A case-by-case Tier III Analysis is only conducted by TCEQ toxicologists for compounds that do not satisfy Tier I or Tier II criteria.

For constituents eliminated during the MERA process or in Tier I or II of the Toxicology Effects Evaluation Procedure, steps which only require comparing modeled air concentrations (i.e., GLC$_{max}$ and GLC$_{ni}$) to ESLs (or multiples of the ESL), there is no need for a more detailed review by the Toxicology Division. In other words, the MERA process and Tier I and II of the Toxicology Effects Evaluation Procedure represent screening procedures by which a permit applicant can demonstrate that emissions of non-criteria pollutants from a facility will be protective of the public's health and welfare.

As reflected in the table below, the Modeling Audit shows that, except for crude oil and crude condensate (both 1-hr GLC$_{max}$), modeled concentrations for constituents to which the Public Health and Welfare Effects Evaluation applies are well below the applicable ESL. Thus, because concentrations of crude oil (annual), crude condensate (annual), and diesel fuel (1-hr) are modeled to be well below the ESL, no health or welfare impacts are expected.

| Pollutant | CAS# | Averaging Time | GLCmax (µg/m³) | GLCmax Location | GLCni (µg/m³) | GLCni Location | ESL (µg/m³) |
|---|---|---|---|---|---|---|---|
| Crude oil, <1% benzene | - | 1-hr | 8782 | Eastern Property Line | 1718 | 972m East | 3500 |
| Crude oil, <1% benzene | - | Annual | 16 | Northern Property Line | 7 | 78m West | 350 |
| Crude condensate | - | 1-hr | 8782 | Eastern Property Line | 1718 | 972m East | 3500 |
| Crude condensate | - | Annual | 16 | Northern Property Line | 7 | 78m West | 350 |
| Diesel fuel | 68334-30-5 | 1-hr | 15 | Eastern Property Line | 15 | Northern Property Line | 1000 |

| Pollutant | Averaging Time | 2 X ESL GLCmax |
|---|---|---|
| Crude oil, | 1-hr | 9 |
| Crude condensate | 1-hr | 9 |

Although the modeled GLC$_{max}$ for crude oil and crude condensate (both 1-hr) are above the respective ESLs, no additional MERA evaluation was required or needed because, as indicated in in the table above, there were only 9 hours out of 8,760 hours (one year) modeled where the GLC$_{max}$ concentration exceeded two times the ESL. As explained above, the Extended Tier II

2474029.v1

Guidance for Marine Terminals (TCEQ, 2001) provides that no further justification is generally needed when this number is less than 24 hours.

Thus, the proposed emissions from the Seahawk Terminal expansion do not pose an adverse health or welfare effect because of the small magnitude of the modeled GLC$_{max}$ and the highly conservative nature of the ESL. The first layer of conservatism in the Health and Welfare Effects Evaluation occurs in the air dispersion modeling, which is conducted to estimate *worst-case* potential exposure levels (i.e., the maximum predicted concentration over a certain number of years of meteorological data from the worst-case tank/dock for Maintenance Startup Shutdown (MSS) emissions and annual emissions and maximum rates from all tanks and docks simultaneously for routine emissions). The modeled air concentrations used in the public health and welfare effects analysis are also highly conservative because the air dispersion model is conservative by design.

Moreover, there is considerable conservatism built into the ESLs themselves. Specifically, the ESLs for crude oil and crude condensate were derived by dividing the National Institute of Occupational Safety & Health (NIOSH) Recommended Exposure Level (REL), the limit below which no worker harm is expected, by conservative safety factors (100 for short-term ESL and 1,000 for long-term ESL). The safety factor of 100 used in deriving the short-term ESL more than accounts for the 3-fold higher exposure to ambient air experienced by the general public (24-hours/day, 7 days/week) by comparison to worker exposure to workplace air (8- to 10-hours/day, 5 days/week). Similarly, the safety factor of 1,000 more than accounts for the 6-fold higher long-term exposure to ambient air experienced by the general public (24-hours/day, 7 days/week for 70 years) by comparison to workplace air exposure (8- to 10-hours/day, 5 days/week for 40 years). Moreover, the crude oil REL and the fuel oil no. 2 Threshold Limit Value (TLV) that form the initial bases for the ESLs were highly conservative (i.e., health protective) to start with.

Further, the GLC$_{max}$ for crude oil and for crude condensate (both 1-hr) were approximately 2.5 times the ESLs, and the exceedance occurred just beyond the proposed fence line at the northeastern boundary in a heavily industrialized area, where public exposure is expected to be minimal. Therefore, it is my opinion that these constituents, as well as other constituents modeled for the health and welfare effects evaluation, do not pose a health or welfare threat.

9.      As explained above, the maximum levels of pollutants to be authorized by the Application are a fraction of the state and federal standards and the state ESLs, which are conservatively designed to be protective of public health and welfare. The only exceptions are crude oil and crude condensate (both 1-hr), which would only be present at levels above the ESL in an industrialized area just beyond the fence line and were subject to additional review that indicated that emissions from crude oil and crude oil condensate are not expected to pose a public health or welfare threat.

10.     Based on the mapping and property owner's list of persons and entities that own property within 1.5 miles of the Seahawk Terminal expansion project (as described in the Kupper Affidavit), no person resides within 1 mile of the Seahawk Terminal. Impacts on public health

2474029.v1

and welfare further than 1 mile would be indiscernible. At greater distances than 1 mile from an emissions source, potential impacts are expected to be even less.

11. Based on my review of the Group Hearing Requests, all of the locations described as being visited by Ms. Wilson are further than 1 mile from the Seahawk Terminal, except for Formosa Outfalls 011 and 013 at the locations described in the Group Hearing Requests. Based on the modeling and on my evaluation as described above, Ms. Wilson would not experience impacts from visiting the locations described in the Group Hearing Requests that are further than 1 mile from the Seahawk Terminal any differently than anyone else who visits places further than 1 mile from the Seahawk Terminal, and such impacts would be indiscernible. Even if Formosa Outfalls 011 or 013 are in the locations described in the Group Hearing Requests, the only locations described as being closer than 1 mile, I would not expect Ms. Wilson to experience discernible health impacts from her visits. Exposure by itself will not result in possible negative effects unless the exposure is of sufficient magnitude, duration, and frequency to cause impacts. Given the modeled concentrations (provided by Joe Kupper) at the locations of Formosa Outfalls 011 or 013, as described in the Group Hearing Requests from the Seahawk Terminal, and given the infrequency and short duration during which the Group Hearing Requests says Ms. Wilson has been present there (3 times in 4 months), I would not expect discernible impacts from any pollutant for which authorization is requested by the Application.

12. The Nguyen Affidavit, which I have reviewed, identifies the location of Formosa Outfalls 011 and 013 based on mapping provided therein, that are different from the locations of those outfalls as described in the Group Hearing Requests. However, my conclusions stated above are the same regardless of whether those outfalls are located as described in the Group Hearing Requests or as described in the Nguyen Affidavit.

Further affiant sayeth not."

_Fraiser_
Lucy Fraiser
Fraiser Toxicology Consulting, LLC


This instrument was acknowledged before me, the undersigned authority, this 3rd day of

March 2022, by Lucy Fraiser, Fraiser Toxicology Consulting, LLC, on behalf of said company.

ALEXIS TAVARES
BENTON COUNTY
NOTARY PUBLIC – ARKANSAS
My Commission Expires Aug. 31, 2028
Commission No. 12705010

Notary Public in and for the State of Arkansas

2474029.v1

# TAB 5

Texas Register Excerpts Regarding Exhaustion of
Administrative Remedies
(Appellant TCEQ Reply Brief, Appendix R-1: 40 *Tex. Reg.*
9651, 9654-55 (Dec 25, 2015), and R-2: 40 *Tex. Reg.* 9660,
9670 (Dec. 25, 2015))

# Appendix R-1

40 Tex. Reg. 9651, 9654-55 (Dec. 25, 2015)

(2)   persons on a relevant mailing list kept under §39.407 of this title (relating to Mailing Lists);

(3)   persons who filed public comment or hearing requests on or before the deadline for filing public comment or hearing requests; and

(4)   any other person the executive director or chief clerk may elect to include.

(b)   When Notice of Receipt of Application and Intent to Obtain Permit is required, mailed notice shall be sent to the state senator and representative who represent the area in which the facility is or will be located.

(c)   For applications filed on or after September 1, 2015, the executive director shall provide written notification of the draft permit to the state senator and state representative who represent the area where the facility which is the subject of the application is or will be located at least 30 days prior to the chief clerk's mailing of the executive director's preliminary decision and Notice of Application and Preliminary Decision.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on December 11, 2015.

TRD-201505522
Robert Martinez
Director, Environmental Law Division
Texas Commission on Environmental Quality
Effective date: December 31, 2015
Proposal publication date: August 21, 2015
For further information, please call: (512) 239-2141



# CHAPTER 50.   ACTION ON APPLICATIONS AND OTHER AUTHORIZATIONS

The Texas Commission on Environmental Quality (TCEQ, agency, or commission) adopts the amendments to §§50.115, 50.119, and 50.143.

Section 50.115 and §50.143 are adopted *with changes* to the proposed text as published in the August 21, 2015, issue of the *Texas Register* (40 TexReg 5235) and will be republished. Section 50.119 is adopted *without change* to the proposed text as published and will not be republished.

Background and Summary of the Factual Basis for the Adopted Rules

This rulemaking is adopted to implement Senate Bills (SB) 709 and 1267, both adopted by the 84th Texas Legislature (2015) with an effective date of September 1, 2015. Concurrently with this adoption, and published in this issue of the *Texas Register,* the commission is adopting revisions to 30 Texas Administrative Code (TAC) Chapter 1, Purpose of Rules, General Provisions; Chapter 39, Public Notice; Chapter 55, Requests for Reconsideration and Contested Case Hearings; Public Comment; Chapter 70, Enforcement; and Chapter 80, Contested Case Hearings. SB 709 is implemented by rules adopted in Chapters 39, 50, 55, and 80.  SB 1267, Sections 4, 6, 7, and 9, is implemented by rules adopted in Chapters 1, 50, 55, 70, and 80.

*SB 709*

SB 709 makes several changes to the current contested case hearing (CCH) process for applications for air quality; water quality; municipal solid waste; industrial and hazardous waste; and underground injection control permits. Most of the changes apply to applications filed and judicial proceedings regarding a permit initiated on or after September 1, 2015. The specific changes to the CCH process are discussed further.

First, members of the public, or interested groups or associations, who request a CCH must make timely comments on the application to be considered as an affected person. For issues to be eligible for a CCH referred to the State Office of Administrative Hearings (SOAH), the issues must have been raised by the affected person in a comment made by that affected person. A group or association seeking to be considered as an affected person must specifically identify, by name and physical address in its timely hearing request, a member who would be an affected person in the person's own right.

Second, the executive director must notify the state senator and state representative for the area in which the facility is located or is proposed to be located at least 30 days prior to issuance of a draft permit. SB 709 also requires TCEQ to provide sufficient notice to applicants and others involved in permit proceedings that the changes in the law from SB 709 apply to all applications filed on or after September 1, 2015; this is required until the rules implementing SB 709 become effective December 31, 2015.

Third, SB 709 identifies specific information that the commission may consider when determining if hearing requestors are affected persons.  SB 709 also prohibits the commission from finding a group or association is affected unless their CCH request has timely and specifically identified, by name and physical address, a member who would be affected in the member's own right. The issues submitted by the commission to SOAH for the CCH must be detailed and complete and contain only factual issues or mixed questions of fact and law.

Fourth, when the commission files the application, draft permit and preliminary decision, and other documentation with SOAH as the administrative record, the record establishes a prima facie demonstration that the draft permit meets all state and federal legal and technical requirements, and the permit, if issued, would protect human health and safety, the environment, and physical property. The prima facie case may be rebutted by presentation of evidence that demonstrates that at least part of the draft permit violates a specifically applicable state or federal requirement. If there is such a rebuttal, the applicant and the executive director may present additional evidence to support the draft permit.

Fifth, the executive director's role as a party in a CCH is to complete the administrative record and support his position developed in the draft permit; however, SB 709 provides that his position can be changed if he has revised or reversed his position on the draft permit that is part of the CCH administrative record; this change is applicable to all permit application hearings, not only the types of applications named previously.

Finally, SB 709 limits the time for the issuance of the administrative law judge's (ALJ's) proposal for decision in a CCH to no longer than 180 days from the date of the preliminary hearing or by an earlier date specified by the commission. SB 709 allows for extensions beyond 180 days based upon agreement of the parties with the ALJ's approval or by the ALJ for issues related to a party's deprivation of due process or another constitutional right. For applications directly referred under §55.210, the pre-

September 1, 2015, was updated, and a new version was created for applications filed on or after September 1, 2015. SB 709 requires the commission to adopt rules by January 1, 2016; these rules were adopted on December 9, 2015, and will become effective on December 31, 2015. Therefore, the implementation is complete, and no adverse impacts have been identified nor are any expected.

*Comment*

HCPCSD is concerned the rulemaking will lessen the public's ability to oppose permitting actions that may negatively impact public health and safety, and the environment. In contrast to the notice and comment process which provides few protections, HCPCSD's experience has shown that the CCH process can be an important and valuable tool in the environmental permitting process. In many instances, more protective permit provisions, in the form of operational improvements, are negotiated during a CCH, and these added provisions minimize the nuisance potential from operations that are either located in an unsuitable location or have a high potential to create particulate or odor nuisances. The result is fewer citizen complaints, notices of violation, and enforcement actions.

*Response*

No changes were made to the rules in response to this comment. The commission understands that there are benefits to the CCH process but does not agree that the rules compromise the public's ability to oppose permitting actions. The rules do not reduce the amount of public notice provided, nor the opportunity to comment on applications and draft permits for the permitting programs that are subject to the requirements of SB 709. Public comments are considered in each permitting action.

*Comment*

HCPCSD requests TCEQ, after evaluating the consequences of this rulemaking, reconsider these rules with the goal of determining and incorporating rules that allow for more public inclusion in the permitting process and actual guaranteed consideration of the public's concerns by the regulated community and TCEQ.

*Response*

No changes were made to the rules in response to this comment. The adopted rules implement SB 709 and SB 1267, neither of which amends the requirements for the commission to provide notice to the public. Further, the rules do not reduce the amount of public notice provided, nor the opportunity to comment on applications and draft permits for the permitting programs that are subject to the requirements of SB 709. Submitted comments are considered in each permitting action.

*Federal Program Approvability*

*Comment*

EPA commented that it based its 1998 authorization of the Texas Pollution Discharge Elimination System (TPDES) program upon a finding that participation in a CCH was not a prerequisite to judicial review. Recent state court decisions, as well as statements made by the Texas Attorney General, indicate this may no longer be true. In a case currently pending at the Texas Court of Appeals, *Sierra Club and Public Citizen v. TCEQ*, No. 03-14-00130-CV, the Texas Attorney General filed a brief stating that participation in a CCH regarding a water quality permit is an essential component of the exhaustion of administrative remedies, and thus a prerequisite to judicial review. In light of this statement and recent State court holdings on the role of the

CCH in determining a person's access to judicial review, EPA requests TCEQ explain how the TPDES program continues to meet the requirements of 40 Code of Federal Regulations (CFR) §123.30 and how the authorized air permitting programs continue to meet Federal Clean Air Act (FCAA) requirements, including FCAA, §502(b)(6).

*Response*

*TPDES:* Requesting or participating in a CCH is not a prerequisite to judicial review in Texas, provided the person exhausted their administrative remedies prior to requesting judicial review. In the 1998 "Statement of Legal Authority for the Texas National Pollutant Discharge Elimination System Program" (Statement of Legal Authority), the Texas Attorney General clearly explained that judicial review of TPDES permits is readily available. The APA provides that if a CCH was held a person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review (Texas Government Code, §2001.171). If a CCH was not held, judicial review is available under the provisions in TWC, §5.351. Neither statute has been amended since Texas received delegation of the TPDES program in 1998.

To place the Texas Attorney General's argument in *Sierra Club and Public Citizen v. TCEQ* within its proper context, one must be familiar with the facts of the case. In that case, Sierra Club and Public Citizen requested a CCH and a hearing was held; they then obtained judicial review but abandoned their claims on appeal. The hearing was to be conducted in two phases, one of which was to determine whether Sierra Club and Public Citizen were affected persons. If, and only if, SOAH found either entity to be an affected person, then SOAH was to hold a CCH on the issues referred. At the hearing, SOAH found that neither entity was an affected person; therefore, SOAH did not address the referred issues. The commission subsequently issued the permit, and both Sierra Club and Public Citizen appealed raising nine points of error. Seven of the nine points of error challenged the commission's determination that they were not affected persons; the remaining two points of error challenged the commission's decision to issue the permit. Sierra Club and Public Citizen waived their challenge to the points of error regarding their affected person status and, instead, attempted to challenge the two points of error regarding the application.

In response to Sierra Club and Public Citizen's appeal, the Texas Attorney General argued that the court did not have jurisdiction to consider a direct challenge to the issuance of the permit when Sierra Club waived its originally pleaded points of error challenging the commission's denial of its hearing request. This position is not in conflict with the language in the Statement of Legal Authority because Sierra Club and Public Citizen had requested a CCH, which was denied. They sought and obtained judicial review of the commission's decision but abandoned their claims on appeal. If the court agreed with Sierra Club and Public Citizen that they were affected persons, it would have reversed the commission's decision and remanded the application back to the commission.

The State of Texas, acting through TCEQ, is required by 40 CFR §123.30 to provide an opportunity for judicial review of the commission's final approval or denial of a TPDES permit. The opportunity for judicial review must be sufficient to "provide for, encourage, and assist public participation in the permitting process." In addition, 40 CFR §123.30 also provides that the opportunity for judicial review is sufficient if it allows the same opportunity for ju-

dicial review of a TPDES permit that would be available to obtain judicial review in federal court for a National Pollutant Discharge Elimination System (NPDES) permit. As discussed earlier, the opportunity for judicial review has not changed since Texas received delegation of the NPDES program, thus the TPDES program continues to meet the requirements of 40 CFR §123.30.

Finally, TCEQ rules have long provided that a person may seek judicial review even if they failed to file a timely public comment, failed to file a timely hearing request, failed to participate in the public meeting, and failed to participate in the CCH. To do so, such a person must first file a motion for rehearing or a motion to overturn the executive director's decision, to the extent of the changes from the draft permit to the final permit decision (See 30 TAC §55.201(h); and §55.25(b)(3), adopted November 5, 1997, and effective December 1, 1997, which were derived from predecessor rules 31 TAC §263.22 and §263.23).

*FCAA, including Title V:* FCAA, §502(b)(6), applies only to federal operating permits under Title V, which are not subject to the CCH opportunity, the primary subject of this rulemaking.

The following information was stated in the most recent public participation rulemaking for new source review (NSR) permit applications (35 TexReg 5198, 5201 (June 18, 2010)) which was submitted to EPA on July 2, 2010, and approved on January 6, 2014 (79 FedReg 551).

Access to judicial review for all air quality permits, both NSR and Title V, is governed by Texas Health and Safety Code (THSC), §382.032. Generally, a person must comply with the requirement to exhaust the available administrative remedies prior to filing suit in district court. In addition, EPA has approved the Texas Title V Operating Permit Program, which required the submission of a Texas Attorney General opinion regarding sufficient access to courts, in compliance with Article III of the United States Constitution. The Attorney General Opinion specifically states that "(a)ny provisions of State law that limit access to judicial review do not exceed the corresponding limits on judicial review imposed by the standing requirement of Article III of the United States Constitution." (Section XIX, Supplement to 1993, 1996, and 1998, Statements of Legal Authority for Texas's FCAA Title V Operating Permit Program by the Attorney General of the State of Texas (October 29, 2001)). The state statutory authority cited in support of the Texas Title V Operating Program includes THSC, §382.032, which is the underlying authority for the appeal of Texas' air quality permit actions. Therefore, the Texas Attorney General statement regarding equivalence of judicial review based on THSC, §382.032 in accordance with Article III of the United States Constitution, is also applicable for every action of the commission subject to the Texas Clean Air Act. In addition, §55.201(h), also applies to NSR applications. As discussed earlier, §55.201(h) provides that a person who failed to file a timely public comment, failed to file a timely hearing request, failed to participate in the public meeting, and failed to participate in the CCH must first file a motion for rehearing or a motion to overturn the executive director's decision, to the extent of the changes from the draft permit to the final permit decision.

In addition, the commission notes that the requirement for a person to exhaust available administrative remedies is also present in federal law. Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed *(Reiter v. Cooper,* 507 U.S. 258, 269 (1993)).

*§50.115, Scope of CCHs*

*Comment*

TXOGA supports the proposed revisions to §50.115(c)(1) and interprets these and SB 709 to allow referral of both disputed questions of fact and mixed questions of law and fact, but not only one or the other. TXOGA requests clarification in the preamble that both disputed questions of fact and mixed questions of law and fact can be referred to the same CCH on an application, but questions of law are reserved for the commission.

*Response*

The commission may refer disputed questions of fact or mixed questions of law and fact, or both, for a CCH on an application, but questions of law are reserved for the commission.

*Comment*

TAM and TXOGA recommend §50.115(c)(1) specify that the list of issues submitted to SOAH be "detailed and complete" consistent with new Texas Government Code, §2003.047(e-1) in SB 709, Section 1.

*Response*

The commission agrees that the rule should reflect the statutory directive regarding issues for CCH submitted to SOAH must be detailed and complete and has added §50.115(g) to implement this part of SB 709. Texas Government Code, §2003.047(e-1) in SB 709, Section 1, requires that the list of issues submitted by the commission to SOAH for a CCH must be "detailed and complete." Section 50.115(c)(1) concerns the commission's evaluation of the issues, and thus the commission declines to amend §50.115(c)(1) as suggested. When commenters can identify specific draft permit conditions or provide detailed information as part of their comments, the commission urges them to do so.

*Comment*

TXOGA commented that the Texas Legislature clearly intended that hearing requestors must state with specificity the factual issues that the hearing requestor would like to have referred to a CCH rather than allowing hearing requestors to raise broad generalizations and leave the commission and the applicant guessing about specific concerns. TXOGA commented that in order to implement the legislative intent, the commission should amend §50.115(c)(1) to require that issues raised in comments should identify a specific draft permit condition.

*Response*

No changes were made to the rule in response to this comment. Texas Government Code, §2003.047(e-1) in SB 709, Section 1, prescribes that the list of issues submitted by the commission to SOAH for a CCH must be "detailed and complete." Further, identifying specific draft permit conditions is not necessary for a comment to raise a specific factual issue. Common examples of issues that are not necessarily related to one or more permit conditions could be comments related to an omission of a requirement in a permit, disagreement regarding the executive director's review of modeling results, or lack of monitoring data necessary to evaluate protectiveness of the draft permit. However, when commenters can identify specific draft permit conditions or provide detailed information as part of their comments, the commission urges them to do so.

*Comment*

# Appendix R-2

40 Tex. Reg. 9660, 9670 (Dec. 25, 2015)

The adopted amendment implements Senate Bill 709 (84th Texas Legislature, 2015).

*§50.143. Withdrawing the Application.*

(a) Upon a request by the applicant at any time before the application is referred to the State Office of Administrative Hearings (SOAH), the executive director shall allow the withdrawal of the application and shall file a written acknowledgment of the withdrawal with the chief clerk. If the application has been scheduled for a commission meeting, the chief clerk shall remove it from the commission's agenda. For purposes of this rule, an application is referred to SOAH when the commission votes during a public meeting for referral or when the executive director or the applicant file a request to refer with the chief clerk under §55.210 of this title (relating to Direct Referrals).

(b) Applications filed before September 1, 2015, for which chief clerk mailed the executive director's preliminary decision and notice of a draft permit under §39.419 of this title (relating to Notice of Application and Preliminary Decision) that are subsequently withdrawn by the applicant are governed by the commission's rules as they existed immediately before September 1, 2015, and those rules are continued in effect for that purpose if the application is refiled with the commission and the executive director determines the resubmitted application is substantially similar to the withdrawn application. For purposes of making this determination, the executive director may consider the following information contained in the withdrawn application and the refiled application:

(1) the name of the applicant;

(2) the location or proposed location of the construction, activity or discharge, to be authorized by the application;

(3) the air contaminants to be emitted;

(4) the area to be served by a wastewater treatment facility;

(5) the volume and nature of the wastewater to be treated by a wastewater treatment facility;

(6) the volume and type of waste to be disposed;

(7) changes in methods of treatment or disposal of waste; or

(8) any other factor the executive director determines is relevant to this determination.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on December 11, 2015.

TRD-201505524
Robert Martinez
Director, Environmental Law Division
Texas Commission on Environmental Quality
Effective date: December 31, 2015
Proposal publication date: August 21, 2015
For further information, please call: (512) 239-2141

♦ ♦ ♦

# CHAPTER 55. REQUESTS FOR RECONSIDERATION AND CONTESTED CASE HEARINGS; PUBLIC COMMENT

The Texas Commission on Environmental Quality (TCEQ, agency, or commission) adopts the amendments to §§55.156, 55.201, 55.203, 55.205, 55.210, and 55.211.

Sections 55.156, 55.201, 55.203, and 55.211 are adopted *with changes* to the proposed text as published in the August 21, 2015, issue of the *Texas Register* (40 TexReg 5240) and will be republished in this issue of the *Texas Register.* Section 55.205 and §55.210 are adopted *without changes* to the proposed text and will not be republished.

Section §55.156(e) adopted to be withdrawn as part of the State Implementation Plan (SIP) and the withdrawal will be submitted to the United States Environmental Protection Agency (EPA) as a revision to the SIP.

Background and Summary of the Factual Basis for the Adopted Rules

This rulemaking is adopted to implement Senate Bills (SB) 709 and 1267, both adopted by the 84th Texas Legislature (2015) with an effective date of September 1, 2015.

Concurrently with this adoption, and published in this issue of the *Texas Register,* the commission is adopting revisions to 30 Texas Administrative Code (TAC) Chapter 1, Purpose of Rules, General Provisions; Chapter 39, Public Notice; Chapter 50, Action on Applications and Other Authorizations; Chapter 70, Enforcement; and Chapter 80, Contested Case Hearings. SB 709 is implemented by rules adopted in Chapters 39, 50, 55, and 80. SB 1267, Sections 4, 6, 7, and 9, is implemented by rules adopted in Chapters 1, 50, 55, 70, and 80.

*SB 709*

SB 709 makes several changes to the current contested case hearing (CCH) process for applications for air quality; water quality; municipal solid waste; industrial and hazardous waste; and underground injection control permits. Most of the changes apply to applications filed and judicial proceedings regarding a permit initiated on or after September 1, 2015. The specific changes to the CCH process are discussed further.

First, members of the public, or interested groups or associations, who request a CCH must make timely comments on the application to be considered as an affected person. For issues to be eligible for a CCH referred to the State Office of Administrative Hearings (SOAH), they must have been raised by the affected person in a comment made by that affected person. A group or association seeking to be considered as an affected person must specifically identify, by name and physical address in its timely hearing request, a member who would be an affected person in the person's own right.

Second, the executive director must notify the state senator and state representative for the area in which the facility is located or is proposed to be located at least 30 days prior to issuance of a draft permit. SB 709 also requires TCEQ to provide sufficient notice to applicants and others involved in permit proceedings that the changes in the law from SB 709 apply to all applications filed on or after September 1, 2015; this is required until the rules implementing SB 709 become effective December 31, 2015.

Third, SB 709 identifies specific information that the commission may consider when determining if hearing requestors are affected persons. SB 709 also prohibits the commission from finding a group or association is affected unless their CCH request has timely and specifically identified, by name and physical address, a member who would be affected in the member's

requests as soon as they are named parties by obtaining a copy of the administrative record.

The administrative record, which consists of certified copies of documents, is provided to SOAH, but that action does not constitute an applicant's prefiled testimony. Decisions regarding how applicants will present their case in the CCH will be governed by the ALJ's orders at the hearing based on the applicable rules. Until specific issues arise regarding implementation of the new prima face case requirement and how it practically works with regard to existing discovery rules, the commission declines to make changes to its discovery rules.

*§55.211, Commission Action on Requests for Reconsideration and CCH*

*Comment*

EPA commented that the proposed revisions to §55. 211(c)(2)(A)(ii) remove the right of the hearing requestors to adopt comments made by others as their own issues for a CCH. Commenters frequently adopt the comments of others instead of repeating those comments in their entirety during the public comment process. EPA requests clarification that if a commenter adopts someone else's comments during the public comment period through written comments or verbally at a public meeting that the hearing requestor could still contest those issues at the hearing. If not, please explain whether hearing requestors determined not to be "affected persons" on this basis could still have access to judicial review, including standing.

*Response*

SB 709, Section 1, Texas Government Code, §2003.047(e-1), provides that "(e)ach issue referred by the commission must have been raised by an affected person *in a comment submitted by that affected person* in response to a permit application." (emphasis added) This new section also provides that the commission, when referring issues for a CCH, must develop a list of issues that is detailed and complete and contains either only factual questions or mixed questions of fact and law. Prior to the adoption of Texas Government Code, §2003.047(e-1), the controlling applicable law in TWC, §5.556 provides, in part, that the commission may not refer an issue to SOAH unless it determines that the issue "was raised during the public comment period" and is relevant and material to the decision on the application. The commission interprets SB 709 to mean that the legislature intends that the person who comments and submits a hearing request must individually and timely submit comments. New comments cannot be made in a hearing request submitted in response to the Executive Director's Response to Comments (as required by §55.156); this is because the new comments would be untimely since they were submitted after the end of the public comment period.

EPA specifically asks whether persons who comment and request a hearing, but who are determined not to be affected persons, will still have access to judicial review. The following is provided to explain judicial review for all possible scenarios with regard to degree of participation in the administrative process.

Standing is a question of law decided by a court *(Cleaver v. George Staton Co. Inc.,* 908 S.W.2d 468 (Tex. App - Tyler 1995, writ denied)). In 1993, the Texas Supreme Court held that standing is a component of subject matter jurisdiction and can be raised for the first time on appeal *(Tex. Ass'n of Business v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445 (1993)). The Supreme Court has restated its holding many times, most recently in June 2015 *(State v. Naylor,* 466 S.W.3d 783 (Tex. 2015)).

If a CCH was held, a party to the hearing is entitled to judicial review under the authority and procedures of the APA. If a CCH is not available, a person affected by a final ruling, order, or decision of the commission may file a petition for judicial review under TWC, §5.351 or THSC, §382.032 within 30 days after the decision is final and appealable. A person seeking judicial review under any authority must have exhausted the available administrative remedies, including complying with applicable commission rules regarding motions for rehearing or reconsideration, e.g., §§50.119, 55.211, and 80.272. Requesting or participating in a CCH is not among the exhaustion requirements for judicial review of many permit actions under TWC, §5.351 or THSC, §382.032.

Even a person who failed to file timely public comment, failed to file a timely hearing request, failed to participate in a public meeting held under the rules, and failed to participate in any CCH held under Chapter 80 may file a motion for rehearing as provided for in §§50.119, 55.211 or 80.272, or a motion to overturn the executive director's decision under §50.139, as long as the motion addresses only the changes from the draft permit to the final permit decision, and thus, may exhaust administrative remedies for purposes of seeking judicial review regarding those changes *(See* §55.201(h)).

A finding by an ALJ or the commission concerning a person's status as an affected person would not bind a Texas district judge in considering that person's standing to seek judicial review of the commission's action on a permit application, under TWC, §5.351 or THSC, §382.032. The "affected person" standard set out in §55.203 and TWC, §5.115(a) comes into play only in a decision on entitlement to a CCH, whereas the statutory availability of judicial review does not depend on requesting or participating in a CCH.

For TPDES discharge and Underground Injection Control permits, the OAG agreed, in its "Statement of Legal Authority for the Texas National Pollutant Discharge Elimination System (TPDES) Program" in 1998 and "State of Texas Office of the Attorney General Statement for Class I, III, IV and V Underground Injection Wells" in 2003 that it will not rely on or refer to the conclusion of an ALJ or the commission that a person is not an affected person as a basis to oppose participation by that person in subsequent judicial proceedings brought under TWC, §5.351. Although the OAG has not issued an opinion regarding what its position would be in judicial proceedings for the Resource Conservation and Recovery Act permitting program, TWC, §5.351 also applies and presumably the position of the OAG would be no different for that program. Similarly, although the OAG has not issued an opinion regarding what its position would be in judicial proceedings for the air quality NSR program, the requirements of THSC, §382.032 are similar to those of TWC, §5.351. The OAG may, however, rely on the facts underlying the conclusion in opposing a person's standing in court. Also, when an ALJ or commission conclusion about affected person status is challenged in the judicial proceeding, the Attorney General may defend that conclusion.

*Comment*

TXSWANA and WEAT/TACWA suggest changing "by the affected person" to "by an affected person whose request is granted" in §55.211(c)(2)(A)(ii), stating that this language is

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim McBride on behalf of Derek Seal
Bar No. 797404
kmcbride@mcginnislaw.com
Envelope ID: 96098837
Filing Code Description: Exhibits - Exempt
Filing Description: Appellants' Exhibits For Oral Argument
Status as of 1/10/2025 4:37 PM CST

Associated Case Party: Calhoun Port Authority

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Woodward | 21979300 | mwoodward@hslawmail.com | 1/10/2025 4:11:58 PM | SENT |
| Barton Hejny | 24082231 | bhejny@hslawmail.com | 1/10/2025 4:11:58 PM | SENT |
| Petrus J.Wassdorf | | pwassdorf@hslawmail.com | 1/10/2025 4:11:58 PM | SENT |
| Alan Sanders | | alan.sanders@dinsmore.com | 1/10/2025 4:11:58 PM | SENT |

Associated Case Party: Texas Oil & Gas Association

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Samia Broadaway | 24088322 | samia.broadaway@bakerbotts.com | 1/10/2025 4:11:58 PM | SENT |
| Beau Carter | | beau.carter@bakerbotts.com | 1/10/2025 4:11:58 PM | SENT |

Associated Case Party: Max Midstream, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Derek  Seal | | dseal@mcginnislaw.com | 1/10/2025 4:11:58 PM | SENT |
| Jordan  Mullins | | jmullins@mcginnislaw.com | 1/10/2025 4:11:58 PM | SENT |
| April Lucas | | alucas@mcginnislaw.com | 1/10/2025 4:11:58 PM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 1/10/2025 4:11:58 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Colton Halter | | colton.halter@oag.texas.gov | 1/10/2025 4:11:58 PM | SENT |
| Debbie Trevino | | debbie.trevino@dinsmore.com | 1/10/2025 4:11:58 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim McBride on behalf of Derek Seal
Bar No. 797404
kmcbride@mcginnislaw.com
Envelope ID: 96098837
Filing Code Description: Exhibits - Exempt
Filing Description: Appellants' Exhibits For Oral Argument
Status as of 1/10/2025 4:37 PM CST

Associated Case Party: Texas Commission on Environmental Quality

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Erin Snody | | erin.snody@oag.texas.gov | 1/10/2025 4:11:58 PM | SENT |
| Annalisa Guartuche | | annalisa.guartuche@oag.texas.gov | 1/10/2025 4:11:58 PM | SENT |
| Sara Ferris | | sara.ferris@oag.texas.gov | 1/10/2025 4:11:58 PM | SENT |
| David Laurent | | david.laurent@oag.texas.gov | 1/10/2025 4:11:58 PM | SENT |

Associated Case Party: San Antonio Bay Estuarine Waterkeeper

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Erin Gaines | | egaines@earthjustice.org | 1/10/2025 4:11:58 PM | SENT |
| Michelle Carlos | | mcarlos@earthjustice.org | 1/10/2025 4:11:58 PM | SENT |
| Claire Huebler | | chuebler@earthjustice.org | 1/10/2025 4:11:58 PM | SENT |
| Ilan Levin | | ilevin@environmentalintegrity.org | 1/10/2025 4:11:58 PM | SENT |

Associated Case Party: Texas Campaign for the Environment

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Erin Gaines | | egaines@earthjustice.org | 1/10/2025 4:11:58 PM | SENT |
| Michelle Carlos | | mcarlos@earthjustice.org | 1/10/2025 4:11:58 PM | SENT |
| Claire Huebler | | chuebler@earthjustice.org | 1/10/2025 4:11:58 PM | SENT |
| Ilan Levin | | ilevin@environmentalintegrity.org | 1/10/2025 4:11:58 PM | SENT |

Associated Case Party: S.DianeWilson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim McBride on behalf of Derek Seal
Bar No. 797404
kmcbride@mcginnislaw.com
Envelope ID: 96098837
Filing Code Description: Exhibits - Exempt
Filing Description: Appellants' Exhibits For Oral Argument
Status as of 1/10/2025 4:37 PM CST

Associated Case Party: S.DianeWilson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ethan Siegel | | esiegel@trla.org | 1/10/2025 4:11:58 PM | SENT |
| Karis Adams | | karisadams@trla.org | 1/10/2025 4:11:58 PM | SENT |